UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PRB Supply LLC, | Case No.: 2:20-cv-01360-JAD-VCF |
| Plaintiff | |
| v. | **Order Granting in Part and Denying in Part Motion to Dismiss and Denying Motion for Fees and Costs** |
| Pale Horse GRS LLP, et al., | |
| Defendants | [ECF Nos. 28, 32] |

PRB Supply LLC brings this breach-of-contract action against Pale Horse GRS LLP and its owners, Chris Clark and Aaron Spradlin. PRB alleges that it and Pale Horse entered into a services agreement in which PRB agreed to provide short-term financing to Pale Horse, which had its own contract to furnish personal protective equipment (PPE) to the state of Tennessee. Under the agreement, the parties contemplated that Pale Horse would repay PRB for the loan and give PRB a percentage of Pale Horse's net revenue as compensation, that Clark and Spradlin would execute personal guarantees to secure the loan, and that an escrow account would be used. PRB claims that the defendants breached the agreement and committed fraud by failing to repay the loan as promised, execute personal guarantees, and acknowledge the escrow instructions.

The defendants move to dismiss PRB's complaint for failure to state a claim and failure to plead its fraud claim with particularity. PRB opposes the motion and countermoves for attorney fees and costs, arguing that the defendants brought their motion in bad faith. Because I find that all but one of PRB's claims are sufficiently pled and are not barred, I deny the defendants' motion to dismiss those claims. But I grant their motion to dismiss PRB's declaratory relief claim because it is duplicative of other relief it seeks and has not been properly

pled. And because I find that the defendants did not act in bad faith, I deny PRB's motion for attorney fees and costs.

## Background[1]

At the onset of the COVID-19 pandemic, Pale Horse obtained "millions of dollars of government contracts" under which it supplied PPE—such as N95 masks and "face goggles"—to Tennessee's Emergency Management Agency (TEMA).[2] As a small entity that only operated "for a brief period of time prior to COVID-19, [Pale Horse] lacked the substantial financial resources necessary to pay for the product and shipping costs required to fulfill the sizeable orders it expected from TEMA."[3] So Pale Horse sought "an alliance with another company that could contribute additional capital and potentially assist with other services necessary to fulfill [its] contractual obligations."[4]

Representatives of Pale Horse and PRB had a conference call on April 8, 2020, during which they discussed a proposed agreement.[5] Clark and Spradlin introduced the idea of an escrow arrangement, explaining that their company "had entered into escrow arrangements in past deals with other parties[,] and there were no issues with doing so here."[6] On that call, Clark and Spradlin represented that Pale Horse would "execute and acknowledge escrow instructions,"[7] and "they agreed to personally guarant[ee] the payment obligations of Pale Horse

---

[1] These facts are a summary of PRB's allegations and are not intended as findings of fact.
[2] ECF No. 27 at ¶ 8.
[3] *Id.* at ¶ 9.
[4] *Id.*
[5] *Id.* at ¶¶ 12–20.
[6] *Id.* at ¶¶ 16–17.
[7] *Id.* at ¶ 18.

2

for the transaction," given PRB's concerns about doing business with a small, new company like Pale Horse.[8]  During a second conference call a week later, Clark and Spradlin reiterated their willingness to enter into an escrow agreement and personally guarantee the loan.[9]  The next day, the parties entered into the written services agreement, in which PRB agreed to provide short-term financing to Pale Horse in connection with Pale Horse's TEMA contract.  Pale Horse agreed to repay the loan and compensate PRB through payment of a loan premium and a percentage of net revenue from TEMA purchase orders.[10]  Pale Horse executed two secured promissory notes to support its obligation.[11]

PRB alleges that the services agreement provides that "PRB's compensation shall be payable directly from an escrow account and pursuant to irrevocable mutual escrow instructions [] in the form attached" and that each of Pale Horse's owners "would execute a Personal Guaranty in the form attached."[12]  But the wrong version of the agreement was initially sent to Pale Horse, with the escrow and guaranty forms inadvertently omitted.[13]  Pale Horse executed that incomplete version.[14]  PRB later provided the defendants with the complete version that included the escrow and guaranty forms.[15]  PRB believed that the defendants unintentionally failed to execute the escrow instructions, as the idea to use an escrow account had originated

---

[8] *Id.* at ¶¶ 11, 19–20.
[9] *Id.* at ¶¶ 21–24.
[10] *Id.* at ¶ 26.
[11] *Id.* at ¶ 27.
[12] *Id.* at ¶¶ 28–29.
[13] *Id.* at ¶ 30.
[14] *Id.* at ¶ 32.
[15] *Id.* at ¶ 31.

with Pale Horse.[16] And PRB characterized the defendants' failure to execute the personal guarantees as "nothing more than oversight," as they had already orally agreed to guarantee Pale Horse's payment obligations and had agreed to do so in signing the agreement itself.[17] When PRB alerted the defendants to the missing signatures on the escrow instructions and personal guarantees, Clark orally "provided further assurances" in response, indicating that he and Spradlin "would cause Pale Horse to appropriately execute and acknowledge" the escrow instructions and that they would execute the personal guarantees.[18] But they never did.

Despite the incomplete documents, PRB funded the loan.[19] It cites time sensitivity and shipping demand as reasons for its decision to perform despite the defendants' failure to sign the additional documents.[20] And it notes its desire "to meet certain contractual deadlines with TEMA" to ensure that PPE was "timely provided to the first responders and frontline personnel in Tennessee" responding to the COVID-19 pandemic.[21] PRB alleges that Pale Horse "has made only a few partial payments" of what it owes PRB.[22]

PRB initially filed this suit in Nevada state court. The defendants removed it and filed a motion to dismiss, which I granted in part and denied in part.[23] I gave PRB leave to amend its claims for breach of contract against Clark and Spradlin, breach of the covenant of good faith

---

[16] *Id.* at ¶ 32.
[17] *Id.* at ¶ 33.
[18] *Id.* at ¶ 34.
[19] *Id.* at ¶ 35.
[20] *Id.*
[21] *Id.*
[22] *Id.* at ¶¶ 37–38.
[23] ECF No. 1; ECF No. 12; ECF No. 26.

and fair dealing against Clark and Spradlin, and fraudulent inducement against all defendants.[24] The defendants now move to dismiss PRB's amended complaint;[25] PRB opposes that motion[26] and countermoves for attorney fees and costs.[27]

## Discussion

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[28] Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[29] The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[30] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[31] A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[32]

---

[24] *Id.*

[25] ECF No. 28.

[26] PRB's opposition and motion for attorney fees are identical. ECF No. 29; ECF No. 32.

[27] I find that both motions are suitable for disposition without oral argument. *See* L.R. 78-1.

[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[29] *Id.*

[30] *Id.* at 679.

[31] *Id.*

[32] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

I.  **PRB's claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Pale Horse are sufficiently pled.**

In their motion to dismiss the original complaint, the defendants argued that PRB's contract claims against Pale Horse should be dismissed because they lacked specificity under the *Iqbal-Twombly* pleading standard.[33] I denied the motion to dismiss those claims, finding them sufficiently pled.[34] The defendants renew that same argument and raise two new ones: that the contract is unenforceable for its lack of agreement on material terms and that PRB waived its breach-of-contract claim by funding the loan and thus performing under the contract.[35]

A.  **PRB's breach-of-contract claims are sufficiently pled under *Iqbal* and *Twombly*.**

At this stage of litigation, PRB's breach-of-contract allegations against Pale Horse are sufficiently pled to survive dismissal. The allegations put the defendants on notice of the facts supporting PRB's claims. PRB's amended complaint states a valid and complete contract as to at least some portions of the agreement among PRB and Pale Horse and states that the services contract was breached by the failure to repay money due. PRB's amended complaint thus states plausible breach-of-contract claims.

B.  **PRB has sufficiently alleged the existence of the requisite essential terms in the services agreement to survive dismissal.**

The defendants' second argument, that the agreement is unenforceable because its lacks accord about certain material terms, also fails. They contend that because the instructions for the

---

[33] ECF No. 12 at 5–6 (citing *Iqbal*, 556 U.S. at 886).
[34] ECF No. 26 at 16–17.
[35] ECF No. 28 at 7–10.

parties to use an escrow account were excluded from the written contract, such an "absence of agreement for how . . . consideration would be paid renders the [a]greement incomplete and unenforceable."[36] While it is true that "[w]hen important terms remain unresolved, a binding agreement cannot exist,"[37] PRB has alleged that the necessary material terms were included in the services agreement that the parties signed. "Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration."[38] "A meeting of the minds exists when the parties have agreed upon the contract's essential terms."[39] "Which terms are essential depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought."[40]

PRB alleges that the parties entered into an agreement under which PRB would provide a loan to Pale Horse in exchange for a percentage of Pale Horse's net revenue and other compensation. That agreement was in writing and included language indicating the parties' meeting of the minds about using an escrow account to facilitate the loan. Although the details of the escrow account's establishment and use were missing from the signed agreement, PRB has alleged that the parties agreed—orally and in writing—to use an escrow account.[41] PRB has therefore alleged that the contract contained the requisite offer, acceptance, meeting of the minds, and consideration that are required under Nevada law. So I reject the defendants' contention that the breach claim fails for lack of essential terms.

---

[36] *Id.* at 7.

[37] *Tropicana Hotel Corp. v. Speer*, 692 P.2d 499, 501 (Nev. 1985) (citation omitted).

[38] *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).

[39] *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 255 (Nev. 2012) (citing *Roth v. Scott*, 921 P.2d 1262, 1265 (Nev. 1996)).

[40] *Id.* (internal quotation marks and citation omitted).

[41] ECF No. 27 at ¶¶ 28–30.

### C. Defendants are not entitled to dismiss based on implied waiver.

The defendants next contend that PRB's breach-of-contract claims against Pale Horse fail because PRB waived its rights to the use of an escrow account and personal guarantees "[b]y continuing to provide funding under the [a]greement despite express knowledge of the absence of finalized, executed escrow instructions or personal guarantees."[42] "A waiver is the intentional relinquishment of a known right,"[43] and it "may be implied from conduct [that] evidences an intention to waive a right, or by conduct [that] is inconsistent with any other intention than to waive the right."[44] "Whether there has been a waiver is a question for the trier of facts."[45] Waiver is an affirmative defense.[46] A motion to dismiss based on an affirmative defense should only prevail when the facts supporting it are obvious on the face of the complaint.[47]

PRB has pled sufficient facts to prevent a waiver-based dismissal at this nascent stage of litigation. While the allegations show that PRB provided the loan despite defendants' failure to sign the escrow and guaranty documents, PRB also claims that it acted according to oral representations that defendants would adhere to those agreements and avers that it would not have gone through with the deal but for those representations. Accepting these allegations as true, as I must at this stage, I cannot conclude that PRB's actions clearly evidenced an intention to waive its rights to enforce the escrow and guaranty agreements. Defendants' motion to dismiss PRB's breach-of-contract claims is thus denied.

---

[42] ECF No. 28 at 9.

[43] *Mahban v. MGM Grand Hotels, Inc.*, 691 P.2d 421, 423 (Nev. 1984) (citation omitted).

[44] *Id.* (citations omitted).

[45] *Id.* (citation omitted).

[46] *See, e.g.*, *State, Univ. & Cmty. Coll. Sys. v. Sutton*, 103 P.3d 8, 18 (Nev. 2004); Nev. R. Civ. P. 8(c).

[47] *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013).

**II.     PRB's claim for breach of oral contract against Clark and Spradlin is not barred by the statute of frauds or the doctrine of waiver.**

**A.     PRB may invoke the main-purpose exception to the statute of frauds.**

The defendants contend that PRB's breach-of-oral-contract claim is barred by the statute of frauds, which requires that certain contracts be confirmed in a signed writing.[48] PRB relies on the Nevada Supreme Court's recognition in *Tore, Ltd. v. Church*[49] of the main-purpose exception to the statute of frauds.[50] The defendants urge me to ignore *Tore* because "in the 32 years since *Tore* was decided, no other Nevada case cites to it as a legal basis for imposing an exception to the Statute of Frauds."[51]

In *Tore*, the Nevada Supreme Court held that the main-purpose exception applies (and courts should thus enforce a guarantor's oral promise) "if the alleged guarantor has a personal, immediate and pecuniary interest in the underlying transaction in which a third party is the original obligor."[52] The rationale behind this exception is that "the evidentiary safeguards provided by the writing requirement of the [s]tatute of [f]rauds" are not needed "when the pecuniary interests of a promisor in a commercial context replace the gratuitous elements often present in suretyship."[53] Under this exception, if "the promisor's main purpose in making his promise is to secure some benefit for himself," a writing is not needed.[54]

---

[48] *Id.* at 10.

[49] *Tore, Ltd. v. Church*, 772 P.2d 1281 (Nev. 1989).

[50] ECF No. 32 at 9–10.

[51] ECF No. 34 at 5.

[52] *Tore*, 772 P.2d at 1283 (citing *Davis v. Patrick*, 141 U.S. 479, 488 (1891)) (collecting cases and noting that "the doctrine has gained widespread approval.").

[53] *Id.* (internal quotation marks and citation omitted).

[54] *Id.* (internal quotation marks and citation omitted).

9

PRB has alleged sufficient facts to claim the benefits of the main-purpose exception and defeat a statute-of-frauds dismissal. It alleges that because Pale Horse was a relatively new entity, PRB sought to avoid risk by having Pale Horse's owners guarantee that they would personally pay back the debt if Pale Horse couldn't. Indeed, it was Clark and Spradlin who suggested the guarantee arrangement, indicating that they had entered similar arrangements with other entities before. The parties agreed to the guarantee arrangement orally during several conference calls and anticipated the use of such an agreement in the services contract, but the terms weren't confirmed in writing because of the inadvertent omission of certain documents from the signed agreement. The main purpose of the guarantee agreement was to secure a benefit for Pale Horse and, as owners, Clark and Spradlin had a personal, immediate, and pecuniary interest in the loan from PRB. Applying the rationale from *Tore*, Clark and Spradlin would not have offered to guarantee Pale Horse's financial obligation to PRB but for their underlying pecuniary interest. So their oral agreement to guarantee Pale Horse's obligation to repay the loan was not required to be in writing to be enforceable. No subsequent case has overruled *Tore* or indicates that *Tore* is no longer valid. Because PRB has pled sufficient facts to trigger the main-purpose exception to the statute of frauds at this juncture, I deny the defendants' motion to dismiss PRB's oral-contract claim.

**B.   Defendants are not entitled to dismissal of the oral-contract claim based on implied waiver.**

The defendants offer waiver as a basis to dismiss this claim, too, suggesting that PRB "relinquished any right to enforce a personal guaranty against the individual [d]efendants" by continuing to provide funding to the defendants "even though it had full knowledge that the

individual [d]efendants did not execute PRB's proposed personal guarantees."⁵⁵  But PRB's allegations are sufficient to defeat this argument as well.  It is not clear from the face of PRB's amended complaint that it intended—explicitly or impliedly—to waive its right to enforce the personal guarantee arrangement against Clark and Spradlin.  PRB alleges that it raised the issue of the missing signatures on the escrow instructions and personal guarantee arrangements with the defendants, who assured PRB that they would sign the additional documents as contemplated in the services agreement.⁵⁶  So I deny the defendants' motion to dismiss the breach-of-oral contract claim against Clark and Spradlin.

### III. PRB has sufficiently pled a fraudulent-inducement claim against all defendants.

The defendants contend that PRB hasn't pled its fraudulent-inducement claim in compliance with Federal Rule of Civil Procedure (FRCP) 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud."⁵⁷  "A pleading is sufficient under [R]ule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations.  While statements of the time, place[,] and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient."⁵⁸

PRB amended its initial complaint to include more details about the alleged fraud, including that Clark and Spradlin "made false representations" to PRB's principals on two conference calls about their willingness to personally guarantee Pale Horse's payment

---

⁵⁵ ECF No. 28 at 12.

⁵⁶ ECF No. 27 at ¶ 34.

⁵⁷ Fed. R. Civ. P. 9(b).

⁵⁸ *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (citing *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987)).

obligations and to use an escrow account.[59] PRB further alleges that Clark and Spradlin "knew their representations were false or, in the alternative, had an insufficient basis for making the representations" because the defendants "almost immediately disavowed their prior representations" once the contract had been signed.[60] These allegations are not conclusory and satisfy Rule 9(b)'s particularity requirement. So I find that PRB has pled its fraudulent-inducement claim with sufficient particularity to satisfy Rule 9(b).

### IV. Defendants' challenge to PRB's unjust enrichment claim is premature.

The defendants move to dismiss PRB's unjust enrichment claim, arguing that it is precluded by PRB's assertion that a written contract exists between the parties.[61] While Nevada law holds that the existence of a contractual agreement precludes recovery for unjust enrichment for the same subject matter,[62] a plaintiff can plead alternative claims at this stage of litigation,[63] particularly when the defendants contend that no enforceable contract exists.[64] As it appears that PRB has properly pled its theories in the alternative, I deny the motion to dismiss this claim.

---

[59] ECF No. 27 at ¶¶ 70–74.

[60] *Id.* at ¶¶ 72–73.

[61] ECF No. 28 at 14–15.

[62] *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) (citation omitted) ("An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement.").

[63] Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones.").

[64] ECF No. 28 at 6.

### V.   PRB's declaratory relief claim is duplicative of other relief it seeks and has not been properly pled.

"The purpose of the Declaratory Judgment Act[65] is to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication thereof without having to wait until his adversary should decide to bring suit, and to act at his peril in the interim."[66] "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."[67] "Where a claim for declaratory relief is merely duplicative of other causes of action asserted by a plaintiff, dismissal is proper."[68]

PRB's declaratory relief claim seeks a declaration of legal rights, including that Pale Horse breached the services agreement, Clark and Spradlin are personally liable for Pale Horse's debts and accounts, and the defendants fraudulently induced PRB.[69] I dismiss this claim because it seeks relief that is duplicative of its other claims. "[C]ourts have dismissed companion claims for declaratory relief where the breach of contract claims resolved the dispute completely and rendered additional relief inappropriate."[70] The resolution of PRB's other claims—for breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent inducement, and unjust enrichment—will sufficiently settle the legal issues between these parties, and no

---

[65] 28 U.S.C. § 2201.

[66] *Shell Oil Co. v. Frusetta*, 290 F.2d 689, 692 (9th Cir. 1961) (citation omitted).

[67] *U.S. v. Washington*, 759 F.2d 1353, 1356–57 (9th Cir. 1985).

[68] *Tyler v. Travelers Commercial Ins. Co.*, 499 F.Supp.3d 693, 702 (N.D. Cal. 2020) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 765–66 (9th Cir. 2007)).

[69] ECF No. 27 at ¶ 87.

[70] *Tyler*, 499 F.Supp.3d at 702 (citing *Davis v. Capitol Records, LLC*, 2013 WL 1701746 at *3 (N.D. Cal. Apr. 18, 2013) (citation omitted)).

useful purpose would be served by issuing a declaration of rights, too.  PRB's declaratory relief claim is therefore unnecessary, and I dismiss it.

## VI. An award of fees and costs is unwarranted because the defendants have not acted in bad faith.

In its opposition to the defendants' motion to dismiss, PRB moves for attorney fees and costs based on the court's "inherent power to sanction parties where they engage in duplicative or unnecessary litigation as well as for bad faith conduct that increases the other party's litigation expenses."[71]  PRB contends that the defendants engaged in "frivolous conduct," which "is nothing more than harassment and abuse," by "seeking to relitigate issues already decided against them."[72]  The defendants respond that "PRB presents no legal basis for its request" and maintain that they brought their dismissal arguments "in good faith."[73]

The district court's inherent power to manage its docket includes the ability to impose attorney fees and costs as sanctions when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[74]  Bad faith "includes a broad range of willful improper conduct,"[75] and the defendants' conduct falls short of that here.  PRB has not demonstrated that an award of sanctions is justified, nor has it shown that the defendants acted willfully or for an improper purpose such that it rises to the level of bad faith.  In urging their second motion to dismiss, the defendants respond to the newly alleged facts and claims in PRB's first-amended complaint.  Although I deemed some of PRB's claims sufficiently pled in ruling on the defendant's first

---

[71] ECF No. 32 at 16.

[72] *Id.* at 16–17.

[73] ECF No. 34 at 9–10.

[74] *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975).

[75] *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

motion to dismiss, PRB's first-amended complaint contains new allegations. As the defendants duly point out, "[n]othing precludes [them] from raising a new argument" in response.[76] So I deny PRB's request for fees and costs.

### Conclusion

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **[ECF No. 28] is GRANTED in part and DENIED in part**. This case proceeds on all claims except the declaratory relief claim, which is dismissed without prejudice and without leave to amend. IT IS FURTHER ORDERED that PRB Supply's motion for attorney fees and costs **[ECF No. 32] is DENIED**.

_____
U.S. District Judge Jennifer A. Dorsey
January 10, 2022

---

[76] ECF No. 34 at 9.