UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PRB Supply LLC, | Case No.: 2:20-cv-01360-JAD-VCF |
| Plaintiff | |
| v. | **Order Denying Motion for Writ of Attachment and Motion to Seal** |
| Pale Horse GRS LLP, et al., | [ECF Nos. 54, 57] |
| Defendants | |

PRB Supply LLC brings this breach-of-contract action against Pale Horse GRS LLP and its owners, Chris Clark and Aaron Spradlin. Earlier this year, I granted in part the defendants' motion to dismiss. Among the remaining claims is PRB's breach-of-oral-guaranty claim against Clark and Spradlin, which I found is not barred by the statute of frauds because PRB alleges that Clark and Spradlin agreed to secure the contract through personal guaranties, and they thus had an underlying pecuniary interest in the transaction.

Relying on Nevada Revised Statutes 31.010 and 31.013, PRB moves for an order to show cause why a writ of attachment for approximately $1.5 million should not issue. Pale Horse objects, contending that writs of attachment in Nevada are limited to unsecured agreements and that because PRB alleges that the underlying contract is secured, a writ of attachment cannot issue. Pale Horse further contends that PRB has taken contradictory positions in this case, simultaneously claiming in its complaint that its agreement with Pale Horse is secured by its owners' personal guaranties, while arguing in its writ-of-attachment motion that it is unsecured. PRB also moves to file several financial documents under seal, a request that Pale Horse doesn't oppose.

Although I haven't yet resolved any of PRB's claims, its allegations that Pale Horse's owners personally guaranteed the underlying transaction amount indicate that PRB believes the agreement is secured. I allowed PRB's breach-of-oral-contract claim against Pale Horse's owners to go forward based on those allegations. PRB cannot have it both ways: a single agreement cannot be simultaneously secured and unsecured—the classifications are mutually exclusive. Because Nevada law allows writs of attachment to issue only for unsecured agreements, I deny PRB's writ-of-attachment motion and decline to issue a show-cause order. And because PRB hasn't satisfied the good-cause standard, I deny its motion to seal exhibits.

## Discussion

### I. Legal standard

Federal Rule of Civil Procedure (FRCP) 64 affords federal litigants all pre-judgment remedies that are available under the law of the forum for seizing property to secure satisfaction of the potential judgment, except when a federal statute governs.[1] "Attachment is a prejudgment remedy that allows a creditor to have a lien on the debtor's assets until the final adjudication of the claim sued upon."[2] In Nevada, attachment is governed by Nevada Revised Statutes (NRS) Chapter 31.[3] NRS 31.013 enumerates the types of cases in which courts are authorized "after notice and hearing" to direct the clerk of court to issue a writ of attachment.[4] One such type is "an action upon a judgment or upon a contract, express or implied, for the direct payment of money" when the judgment or contract is either (a) not secured by real or personal property in

---

[1] Fed. R. Civ. P. 64.

[2] *Sullivan v. Riviera Holdings Corp.*, 2015 WL 13678961, at *2 (D. Nev. May 4, 2015) (citations omitted).

[3] *See, e.g.*, Nev. Rev. Stat. § 31.010.

[4] *Id.* § 31.013.

2

Nevada or (b) the value of the security given isn't enough and loss of value isn't the plaintiff's fault.[5] Nevada law also permits attachment "[i]n any other case where the court finds that extraordinary circumstances exist which will make it improbable for the plaintiff to reach the property of the defendant by execution after the judgment has been entered."[6]

Regardless of the type of action involved, the movant must include with its application or motion for attachment an affidavit that meets the requirements of NRS 31.020. This includes setting forth "clearly the nature of the plaintiff's claim for relief" and "the amount which the affiant believes the plaintiff is entitled to recover from the defendant," and describing "in reasonable and clear detail all the facts which show the existence of any one of the grounds for attachment" and "the money or property sought to be attached and the location thereof if known."[7]

## II.     PRB cannot obtain a writ of attachment.

### A.     PRB alleges in its complaint that the underlying agreement is secured.

PRB alleges that it is entitled to recover $1,558,059.52 from Pale Horse in this action and asserts—citing no caselaw—that those funds should be "held by this [c]ourt (or in a separate interest-bearing account overseen by this [c]ourt) such that [] PRB would collect upon said funds once judgment is entered in this case"[8] because "[u]nless a writ of attachment or garnishment is issued, [] Pale Horse may disburse these funds, including to Pale Horse's principals."[9] Pale

---

[5] *Id.* § 31.013(1).
[6] *Id.* § 31.013(3).
[7] *Id.* § 31.020.
[8] ECF No. 54 at 9 (PRB's motion). I find that these motions are suitable for disposition without oral argument. L.R. 78-1.
[9] *Id.* at 7.

Horse responds that PRB hasn't met the requirements of NRS 30.013 because PRB's complaint takes the position that the underlying contract is secured and, alternatively, that PRB hasn't demonstrated that extraordinary circumstances exist warranting a writ of attachment.[10]  PRB replies that Pale Horse filed nothing but "bald attorney argument" and maintains that "the subject agreement is not secured," rendering a writ of attachment appropriate.[11]  PRB characterizes Pale Horse's argument about the secured nature of the agreement as "highly disingenuous since [d]efendants have sought dismissal of the claims premised on oral personal guaranty."[12]

But PRB's own complaint undermines its argument for a writ of attachment: it alleges that its owners secured the agreement through personal guaranties.[13]  For example, PRB alleges that it "sought additional security in the form of an escrow arrangement and personal guaranty from Pale Horse's principals."[14]  And PRB itself repeatedly refers to the underlying promissory notes as "secured"[15] and even does so in the affidavit it attaches to its writ-of-attachment motion.[16]  I allowed PRB's claims to survive dismissal, in part, based on its allegations that Pale Horse's principals personally guaranteed the underlying debt and would repay the loan if Pale Horse couldn't.[17]  PRB cannot at once proceed on its breach-of-oral-guaranty claim against Pale

---

[10] ECF No. 58 at 3 (Pale Horse's opposition to PRB's writ-of-attachment motion).

[11] ECF No. 59 at 1, 3–4 (PRB's reply brief).

[12] *Id.* at 3.

[13] *See, e.g.*, ECF No. 27 at ¶¶ 11, 15, 19, 24, 29, 32–34 (first-amended complaint).

[14] *Id.* at ¶ 11.

[15] *See, e.g., id.* at 2, 5.

[16] *Compare* ECF No. 55 (PRB member Jeffrey Andersen's affidavit) at ¶ 5 (referring to "the Secured Promissory Note" and "another Secured Promissory Note") *with* ECF No. 55 at ¶ 15 (noting that "[t]he subject contract is not secured by any mortgage, lien, or pledge upon real or personal property situated in the State of Nevada." (citing Nev. Rev. Stat. § 31.013(1)(a)).

[17] ECF No. 63 at 9–11.

Horse's owners and obtain a writ of attachment.  Because PRB hasn't demonstrated that the underlying agreement is unsecured, as NRS 30.013(1) requires for such relief, its motion for a writ of attachment must be denied.

### B. PRB hasn't demonstrated the existence of extraordinary circumstances.

Nor has PRB shown that it is entitled to this relief under an alternative theory.  NRS 31.013(3) allows the court to issue a writ of attachment "[i]n any other case where the court finds that extraordinary circumstances exist which will make it improbable for the plaintiff to reach the property of the defendant by execution after the judgment has been entered."[18]  PRB makes the conclusory statement that "there are extraordinary circumstances that may make it improbable for" PRB to reach Pale Horse's assets if and when this case concludes in PRB's favor.[19]

PRB cites to Pale Horse's response to an interrogatory in which Pale Horse states that "all monies provided to Pale Horse by the State of Tennessee remain in the company bank account(s) of Pale Horse."[20]  PRB then speculates that, without a writ of attachment, "Pale Horse may disburse these funds, including to Pale Horse's principals who seek dismissal from this lawsuit in their capacities as individually-named defendants" and, "based on Pale Horse's relatively small size and having operated only for a few years, it may not have other sufficient assets beyond the funds sought to be attached."[21]  PRB also argues that "because the funds remain in Pale Horse's company accounts more than one year after receipt, there is apparently no hardship to Pale Horse's operations" if I issue a writ of attachment.[22]  The same arguments

---

[18] Nev. Rev. Stat. § 31.013(3).
[19] ECF No. 54 at 7.
[20] *Id.* (citing ECF No. 55-8 at 10).
[21] *Id.*
[22] *Id.*

appear, nearly verbatim, in PRB member Jeffrey Andersen's affidavit in support of PRB's motion.[23] Pale Horse responds that "PRB identifies no specific facts to support" its assertions and bases its motion on "unfounded speculation."[24] Because PRB doesn't identify anything beyond its own hypotheses to support its extraordinary-circumstances argument, I find that PRB has not demonstrated that extraordinary circumstances exist warranting the issuance of a writ of attachment, so I deny PRB's motion and decline to issue a show-cause order.

### III. PRB hasn't shown good cause for the six exhibits to be filed under seal.

PRB seeks to seal six exhibits: two promissory notes, two sets of bank transaction details, and two invoices.[25] It reasons that "[t]he disclosure of this information would provide the public with information to which [it] would not normally be privy, and such disclosure could undermine or compromise the business interests of the parties to this case."[26] It adds that because the parties "are private companies . . . , there does not appear to be a public interest to this information that would override the interest in confidentiality" and that "[t]he public has no stake in the outcome of this case."[27]

It is well-established that the Ninth Circuit "recognize[s] a 'general right to inspect and copy public records and documents, including judicial records and documents.'"[28] "This right is justified by the interest of citizens in keeping a watchful eye on the workings of public

---

[23] ECF No. 55 at ¶ 16.
[24] ECF No. 58 at 7.
[25] ECF No. 57 at 4.
[26] *Id.* at 3–4.
[27] *Id.*
[28] *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)).

agencies."[29] But "access to judicial records is not absolute."[30] "When ruling on a motion to seal court records, the district court must balance the competing interests of the public and the party seeking to seal judicial records."[31] "To seal the records, the district court must articulate a factual basis for each compelling reason to seal[, which] must continue to exist to keep judicial records sealed."[32] When the documents are attached to a non-dispositive motion, "a particularized showing of 'good cause' under [FRCP] 26(c) is" all that's required.[33]

      PRB hasn't shown good cause to seal its exhibits. PRB offers little more than conclusory statements in support of its argument and points to no particularized information within the proposed sealed exhibits that overcomes the strong presumption of the public's right of access to court documents.[34] I've reviewed the exhibits in camera and observed that they don't contain any financial information—such as account numbers or routing numbers—and instead contain form contract language, high-level transaction details (like a withdrawal of $1,080,000 on a certain date), and general line-item descriptions and corresponding prices for items on two invoices. The Ninth Circuit has recognized that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."[35] Because PRB

---

[29] *Id.* (cleaned up).

[30] *Id.*

[31] *In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig.*, 685 F.3d 1115, 1119 (9th Cir. 2012) (citing *Kamakana*, 447 F.3d at 1179).

[32] *Id.* (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003)).

[33] *Id.* (citing *Foltz*, 331 F.3d at 1135).

[34] ECF No. 57 at 3–4.

[35] *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).

hasn't met the good-cause standard, I deny its motion to file the six exhibits under seal and direct the Clerk of Court to unseal them.

**Conclusion**

IT IS THEREFORE ORDERED that PRB's motion for an order to show cause why an order for pre-judgment writ of attachment and/or garnishment should not issue **[ECF No. 54]** and PRB's motion to seal exhibits **[ECF No. 57] are DENIED**. The Clerk of Court is directed to **REMOVE THE SEAL from ECF No. 56**.

_____
U.S. District Judge Jennifer A. Dorsey
May 4, 2022